IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PHILADELPHIA, *et al.*, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 22-0027-KSM |

MEMORANDUM

**MARSTON, J.**                                                                                                                                                                                                       **June 23, 2022**

      Plaintiff Victor Hernandez was brutally beaten by four corrections officers ("COs") and a sergeant while incarcerated at Curran-Fromhold Correctional Facility ("CFCF") and suffered serious injuries. (Doc. No. 1 ¶¶ 14–16.) Hernandez brings claims against CO Jaheen Andrews, CO Mamin Hart, CO O'Neil Murray, CO Reese, and Sergeant Granville[1] (collectively, the "Individual Defendants") under 42 U.S.C. § 1983, alleging that they violated his constitutional right to be free from excessive force by beating him and his constitutional right to access the courts by concealing their true identities. (*Id.* ¶¶ 24–34.) Hernandez also seeks to hold the City of Philadelphia (the "City") liable under a theory of municipal liability. (*Id.* ¶¶ 35–49.)

      The Individual Defendants have answered the Complaint, but the City moves to dismiss the municipal liability claims. (Doc. No. 12.) The City argues Hernandez fails to state a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978), because he has not pled that any City practice, policy, or custom was a "moving force" behind

---

[1] The Complaint does not identify CO Reese's or Sergeant Granville's first names. (*See* Doc. No. 1 ¶ 5.)

his alleged harm.  (*Id.* at 9.)  Hernandez opposes the motion.  (Doc. No. 14.)  For the reasons below, the City's motion is granted.

## I.     FACTUAL BACKGROUND

Accepting the allegations in the Complaint as true, the relevant facts are as follows.

Hernandez was incarcerated at CFCF.  (Doc. No. 1 ¶ 8.)  On October 6, 2020, he got into a fight with other inmates in his pod over the use of telephones.  (*Id.*)  In the aftermath of the fight, he was relocated to a different pod and "locked into" his new cell.  (*Id.* ¶¶ 9–10.)  Shortly after Hernandez was placed in the new cell, CO Andrews entered Hernandez's cell and ordered a strip search.  (*Id.* ¶¶ 11–12.)  Once Hernandez was disrobed, the four other Individual Defendants entered his cell and, together with CO Andrews, viciously beat him.[2]  (*Id.* ¶¶ 13–14.)

Hernandez suffered multiple serious injuries from the beating, including a ruptured testicle, a blood clot in his testicle, an enlarged scrotum (which was filled with approximately one liter of fluid and blood), a fractured rib, and a facial wound.  (*Id.* ¶¶ 15–16.)  He had to be rushed to the hospital to undergo emergency surgery in order to save his testicle.  (*Id.* ¶ 17.)  Hernandez's scrotum is permanently injured and remains scarred from the incident.  (*Id.* ¶ 20.)

After being released from the hospital, Hernandez was returned to CFCF and placed in a cell for prisoners being punished (known as the "hole"),[3] based on a violation the Individual Defendants allegedly fabricated.  (*Id.* ¶ 19.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether

---

[2] The Complaint does not include any allegations to explain the motive for the beating.  (*See generally* Doc. No. 1.)

[3] The term "the hole" is often used to refer to solitary confinement.

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although we must accept as true the allegations in the complaint, we are not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (cleaned up).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

### III. DISCUSSION

Hernandez brings two claims against the City under Section 1983, alleging that the City violated his constitutional rights to be free from excessive force and to access the courts.  (Doc. No. 1 ¶¶ 24–30; 35–49.)  Before considering whether Hernandez has stated a claim against the City, the Court first provides a brief overview of how municipalities can be held liable under Section 1983.

Section 1983 states, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  A municipality can be held liable under Section 1983 only "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by them." *Beck v. City of Pittsburgh*, 89

3

F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).  Put differently, a municipality "may not be held liable on a theory of vicarious liability rooted in *respondeat superior*," but it may be held liable "when the injury inflicted is permitted under its adopted policy or custom."  *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citing *Beck*, 89 F.3d at 971).

Courts have recognized two avenues to municipal liability under *Monell*.  "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations omitted); *Benson v. Delaware County*, CIVIL ACTION NO. 21-2854, 2022 WL 784475, at *3 (E.D. Pa. Mar. 15, 2022).

With this background in mind, the Court considers whether Hernandez has stated a municipal liability claim against the City in connection with his excessive force and access to courts claims.

### A. *Excessive Force*

Hernandez alleges the City violated his constitutional right to be free from excessive force.  (Doc. No. 1 ¶¶ 38–49.)  For his *Monell* claims, Hernandez asserts that the violations are based on *both* a policy or custom *and* a failure or inadequacy and also presents a third, novel basis for his *Monell* claim—that because a supervisor participated in the beating, the City can be held liable.  (*See id.*; *see also* Doc. No. 14 at 4–9.)  The Court considers each of these arguments in turn.

#### 1. **Policy or Custom**

Hernandez first attempts to support his *Monell* claim on allegations that the City had a

"*de facto* policy, or custom" of "acquiesc[ing] in" officers' use of excessive force.  (Doc. No. 1 ¶ 47.)  The City argues that Hernandez fails to allege the existence of a policy or custom that led to his injuries because the Complaint "simply parrots the language of a *Monell* claim without containing actual facts."  (Doc. No. 12 at 8.)  We agree with the City—Hernandez has not alleged the existence of a specific policy or custom that resulted in his deprivation of rights.

A *Monell* claim may be based on an official policy or on a custom.  *Mulholland*, 706 F.3d at 237.  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Id.* (citations omitted).  A course of conduct rises to the level of "custom" when "such practices of state officials are so permanent and well-settled as to virtually constitute law.  *Id.*  "Custom . . . may also be established by evidence of knowledge and acquiescence."  *Beck*, 89 F.3d at 971.

Hernandez does not plead the existence of a relevant municipal policy, as the Complaint does not refer to any "official proclamation, policy, or edict."  *Mulholland*, 706 F.3d at 237.  Rather, he claims that the City had a custom of using excessive force on inmates because it had knowledge of and voluntarily acquiesced to its officers' use of excessive force on inmates, but he provides no detail on *how* the City had such knowledge.  (Doc. No. 1 ¶¶ 35–49.)  A *Monell* claim will not survive a motion to dismiss if it "simply paraphrases § 1983."  *McTernan v. City of York,* 564 F.3d 636, 659 (3d Cir. 2009).  For instance, in *Anderson v. City of Philadelphia*, the Court found allegations that the City had a custom of "condon[ing] the use of unjustified, unreasonable, unnecessary, malicious, sadistic, willful and excessive force" and was "deliberately indifferent to the need for more or different training, supervision, investigation or discipline" insufficient to state a policy or custom claim.  CIVIL ACTION NO. 16-5717, 2017 WL 550587, at *6 (E.D. Pa. Feb. 10, 2017).  The allegations the court found insufficient in

5

*Anderson* are almost identical to the allegations in Hernandez's Complaint.  (*See, e.g.*, Doc. No. 1 ¶ 36 (alleging that the City "acquiesced to . . . customs that Defendants knew or should have known would lead to violations of citizens' constitutional rights"); *id.* ¶ 46 (alleging that the City has a custom of "failing to properly train, investigate, supervise and discipline its employees . . . regarding individuals' [constitutional] rights").)

To be sure, Hernandez's Complaint includes one more allegation regarding the City's knowledge than did the complaint in *Anderson*:  he alleges the City knew its corrections officers used excessive force because it "has been sued on a myriad of occasions for corrections officers beating inmates as evinced on this Court's ecf."  (*Id.* ¶ 23.)  Hernandez does not, however, cite any specific lawsuits that should have put the City on notice of such a custom, and the vague reference to "this Court's ecf" is insufficient to identify such lawsuits.  Thus, this single, generalized allegation that the City and City employees are frequently targeted in excessive force lawsuits is insufficient to plausibly allege that the City was aware of and ignored a custom of using excessive force on inmates.  *See Cloyd v. Delaware Cty.*, Civil Action No. 14–4833, 2015 WL 1312524, at *3–4 (E.D. Pa. Mar. 23, 2015) (holding that the plaintiff's citation to a single other case against the same defendant alleging the defendant violated another prisoner's Eighth Amendment rights was insufficient to allege that the defendant had a custom of violating prisoners' Eighth Amendment rights); *see also Stokes v. Carney*, CIVIL ACTION NO. 21-CV-1435, 2021 WL 4477185, at *7 (E.D. Pa. Sept. 29, 2021) (holding that generalized allegations that the plaintiffs flagged constitutional violations for the prison's law librarian "without specifying the particular issues that they brought to her attention" were insufficient to support the existence of a municipal custom); *Moore v. City of Philadelphia*, CIVIL ACTION No. 19-4400, 2020 WL 1814115, at *4 (E.D. Pa. Apr. 9, 2020) ("Merely alleging that the City knew or should

have known about the alleged unlawful conduct at issue is insufficient to meet the 'rigorous standards of culpability and causation' necessary to allege municipal liability."). *Contra Estate of Roman v. City of Newark*, 914 F.3d 789, 799 (3d Cir. 2019) (holding that the plaintiff sufficiently alleged a custom of conducting warrantless searches where the complaint pled that the municipality was under the supervision of a federal monitor for conducting warrantless searches).

Hernandez fails to allege that the City had a policy or custom of permitting officers to use excessive force against inmates, so this claim must be dismissed.

### 2. Failure or Inadequacy

Next, Hernandez attempts to base his excessive force claim against the City on allegations that the City "fail[ed] to properly train, investigate, supervise and discipline its employees . . . regarding individuals' rights under the Fourth Amendment, Eighth Amendment and Fourteenth Amendment of the Constitution of the United States." (Doc. No. 1 ¶ 46.)  The City argues this claim fails because Hernandez again simply parrots the language of a *Monell* claim without pleading "actual facts."  (Doc. No. 12 at 8.)  We agree.

The Third Circuit has "acknowledged the close relationship between policy-and-custom claims and failure-or-inadequacy claims"; however, the two claims are distinct. *Forrest*, 930 F.3d at 106.  To state a *Monell* claim predicated on a failure to train, supervise, or discipline, a plaintiff "must [allege] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Id.*  To plead deliberate indifference in the failure to train context, a plaintiff ordinarily must allege "a pattern of similar constitutional violations by untrained employees." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014).  In certain extreme situations, however, "the need for training can be said to be 'so obvious,' that failure to

7

do so could properly be characterized as deliberate indifference to constitutional rights." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)) (cleaned up).  Similarly, to plead deliberate indifference in the failure to supervise context, a plaintiff must allege that the municipality "has contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  *Simpson v. Ferry*, 202 F. Supp. 3d 444, 455 (E.D. Pa. 2016).

Hernandez alleges the City "knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff" (Doc. No. 1 ¶ 47), but he does not allege *why* the City "knew or should have known" that.  Hernandez does not allege that there was a pattern of officers at CFCF using excessive force on inmates,[4] nor does he include allegations showing his beating was the kind of situation that was "so obvious" that the City's purported failure to train necessarily constitutes deliberate indifference.  The Complaint includes allegations regarding the City's failure to train officers to "be in constant communication with the supervisors" and to "save video footage" (*see id.* ¶¶ 44–45), but these allegations are likewise insufficient.  Hernandez again fails to support these allegations with any facts showing a pattern of similar constitutional violations that would have put the City on notice that it needed to provide such training.  Even viewed together, Hernandez's conclusory allegations are insufficient to state a failure or inadequacy claim.  *See Benson*, 2022 WL 784475, at *4 (holding that the plaintiff failed to state a failure or inadequacy claim where the plaintiff did not "allege facts showing a pattern of prior incidents that suggest a need for additional staffing, training, testing, discipline or supervision"); *Buonadonna v. Se. Delco Sch. Dist.*, Civil Action No. 14–02708, 2015 WL 2365629, at *12 (E.D. Pa. May 18, 2015) (dismissing a failure or inadequacy claim where the plaintiff "merely alleg[ed] the

---

[4] Hernandez's passing reference to "this Court's ecf" fails to allege such a pattern.

existence of prior incidents").

Because Hernandez's allegations regarding the City's failure to train, investigate, supervise, and discipline its officers "simply paraphrase § 1983," *see McTernan*, 564 F.3d at 659, he fails to state an excessive force claim against the City on this theory.

### 3. Supervisory Involvement

Last, Hernandez attempts to base his excessive force *Monell* claim on Sergeant Granville's participation in the beating. (Doc. No. 1 ¶ 43; Doc. No. 14 at 4–6.) Specifically, Hernandez argues that Sergeant Granville's involvement in the beating (in direct violation of a written policy prohibiting the use of excessive force against inmates) illustrates the widespread use of excessive force against inmates at correctional facilities in Philadelphia, and is sufficient, on its own, to support a municipal liability claim. (Doc. No. 14 at 5–6.) We disagree. Hernandez's caselaw does not persuade the Court that it supports the principle that a supervisor's involvement in the beating is sufficient to support a municipal liability claim.

Hernandez cites two cases he contends show that municipal liability may lie where "supervisors were directly involved in the constitutional violation by the municipality" (*id.* at 5), but neither supports that proposition. The first is *Anela v. City of Wildwood*, 790 F.2d 1063 (3d Cir. 1986). The plaintiffs in *Anela* were six young women who had been detained overnight for violating Wildwood's anti-noise ordinance. *Id.* at 1064. At the time of the women's detention, the State of New Jersey had a rule requiring municipalities to issue a summons and release arrestees who had committed minor offenses. *Id.* at 1066. Despite this rule, a Wildwood municipal judge established a procedure whereby the city routinely detained arrestees overnight, even if they had committed only minor offenses. *Id.* The Third Circuit held that this amounted to a "policy or custom" that could predicate a *Monell* claim. *Id.* at 1067. The fact that a

municipal judge crafted the policy was relevant to the Third Circuit's holding that there was an official policy, but the Third Circuit did not hold that a supervisor's involvement in an alleged constitutional deprivation, without more, was sufficient to establish municipal liability.  *Id.*

Hernandez also cites *Garcia v. Salt Lake County*, 768 F.2d 303 (10th Cir. 1985).  In *Garcia*, the police booked a semi-conscious man who smelled of alcohol rather than sending him to the hospital.  *Id.* at 305.  Although the jail had a formal policy of transferring any unconscious detainee to a hospital for a medical diagnosis prior to booking, there was an unwritten policy of booking unconscious individuals suspected of being intoxicated rather than sending them to the hospital. *Id.* at 306–07.  The Tenth Circuit held that there was sufficient evidence to establish a *Monell* claim based on the unwritten policy.  *Id.* at 308.  It also found that the plaintiff independently stated a *Monell* claim based on the jail's deliberate indifference to inmates' medical needs, evinced by the fact that the jail physician only visited the jail "three days a week for two hours." *Id.*  In sum, the Tenth Circuit found support for a municipal liability based on the existence of an unwritten policy and, separately, based on the jail's deliberate indifference. *Id.*  Notably, the Tenth Circuit's ruling was *not* based on a supervisor's involvement in the specific incident involving the semi-conscious detainee.

Although the facts of those two cases do not directly involve a supervisor, Hernandez argues they support his claim that municipal liability may lie where "supervisors were directly involved in the constitutional violation by the municipality."  (Doc. No. 14 at 5.)  Hernandez conveniently overlooks that, in both cases, there was a specific policy or custom undergirding the *Monell* claims.  *See Anela*, 790 F.2d at 1067; *Garcia*, 768 F.2d at 308.  Because neither case is analogous to the facts here, the Court is not persuaded that they support Hernandez's contention that a *Monell* claim can be based solely on a supervisor's involvement in an alleged

constitutional violation.

The Court declines to create new law. The Third Circuit has not held that a plaintiff can state a claim for municipal liability based on the mere fact that a low-level supervisor was involved in an alleged deprivation of constitutional rights. Hernandez's excessive force claim against the City fails to the extent it is based on Sergeant Granville's involvement in the attack.

*   *   *

Hernandez has not plausibly alleged that the City has a policy or custom of disregarding officers' excessive use of force or that the City failed to train and supervise officers to prevent them from using such force, and a supervisor's involvement in an alleged constitutional violation is not enough, on its own, to establish municipal liability. As such, the excessive force claim against the City fails.

### B.  *Access to Courts*

Hernandez also claims that all Defendants, including the City, "violated and conspired to deprive Plaintiff of his Due Process rights of Access to Courts by concealing their true identities and any identities of any unknown parties related to this action." (Doc. No. 1 ¶ 29.) The City argues this claim must fail because Hernandez does not allege how he has "been precluded from seeking relief in court for this very incident." (Doc. No. 12 at 7.) The City also argues that Hernandez fails to state a *Monell* claim for this alleged deprivation because Hernandez has not alleged the City has a policy of concealing employees' identities to shield them from lawsuits. (*Id.*)

We agree with the City for several reasons. As a threshold matter, Hernandez seems to have abandoned this claim. He does not address the City's access to courts arguments in his response brief. (Doc. No. 14.) And, even after the City pointed out that Hernandez had

abandoned his access to courts claim in its reply brief (*see* Doc. No. 15 at 1 ("Responding in opposition to the City's Motion, Plaintiff does not submit argument on the access to courts claim, and that should be dismissed.")), Hernandez did not make any arguments about it in his sur-reply (Doc. No. 16).

Even if Hernandez had not abandoned this claim, it would nevertheless fail. To state a claim for access to courts, a plaintiff must identify a "nonfrivolous," "arguable" claim he was unable to litigate and "describe the official acts frustrating the litigation." *See Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). Hernandez claims that five corrections officers violated his constitutional right to be free from excessive force, and all five officers are defendants in this action. (*See generally* Doc. No. 1.) Hernandez does not purport to have any claims against anyone who is not named in this lawsuit, nor does he allege how Defendants acted to frustrate this litigation, so the access to courts claim must fail. *See Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (per curiam) ("Harper fails to identify a nonfrivolous or arguable claim on which to base his access to courts claim against the Prothonotary. As such, dismissal was proper.").

This claim also fails as to the City specifically because the Complaint does not allege that the City has a policy or custom of obstructing individuals from bringing suit against the City or City employees. *See Frazier v. City of Philadelphia*, CIVIL ACTION NO. 17-3741, 2017 WL 3749777, at *1 (E.D. Pa. Aug. 29, 2017) (dismissing the plaintiff's access to courts claim as against the City of Philadelphia because he "has not alleged a municipal policy or custom that led to the violation of his rights").

Hernandez fails to state a claim that the City violated his constitutional rights by denying him access to courts, so the Court grants the City's motion to dismiss as to this claim.

## IV. CONCLUSION

For the reasons above, the City's motion to dismiss is granted. An appropriate Order follows.