IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR HERNANDEZ, <br><br> Plaintiff, <br><br> *v.* <br><br> CITY OF PHILADELPHIA, *et al.*, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 22-0027-KSM |

MEMORANDUM

**MARSTON, J.**                                                                October 18, 2022

Plaintiff Victor Hernandez was brutally beaten by four corrections officers ("COs") and a sergeant while incarcerated at Curran-Fromhold Correctional Facility ("CFCF") and suffered serious injuries.  (Doc. No. 23 ¶¶ 8–17.)  Hernandez brings claims against CO Jaheen Andrews, CO Mamin Hart, CO O'Neil Murray, CO Reese, and Sergeant Granville[1] (collectively, the "CO Defendants") under 42 U.S.C. § 1983, alleging that they violated his constitutional right to be free from excessive force by beating him.  (*Id.* ¶¶ 29–32.)  Hernandez also seeks to hold the City of Philadelphia (the "City") liable under a theory of municipal liability.  (*Id.* ¶¶ 33–49.)  And he seeks to hold Blanche Carney, the Commissioner of the Philadelphia Prisons Department ("PPD"), and Karen Butler and Robert Rose, Deputy Wardens at CFCF, (collectively, the "PPD Defendants") liable under a theory of supervisory liability.  (*Id.* ¶¶ 50–56.)

Presently before the Court is the Application of the United States to Intervene and Stay Proceedings (Doc. No. 35) and the City's Motion to Stay (Doc. No. 54).  Hernandez opposes

---

[1] The Amended Complaint does not identify CO Reese's or Sergeant Granville's first names. (*See* Doc. No. 23 ¶ 5.)

both motions. (Doc. No. 58.) For the reasons below, the United States' motion is denied as moot, and the City's motion is granted in part.

**I.     BACKGROUND**

*A.     Factual Background*

Accepting the allegations in the Amended Complaint as true, the relevant facts are as follows.

Hernandez was incarcerated at CFCF. (*Id.* ¶ 8.) On October 6, 2020, he got into a fight with other inmates in his pod over the use of telephones. (*Id.* ¶ 9.) In the aftermath of the fight, he was relocated to a different pod and "locked into" his new cell. (*Id.* ¶¶ 10–11.) Shortly after Hernandez was placed in the new cell, CO Andrews entered Hernandez's cell and ordered a strip search. (*Id.* ¶¶ 12–13.) Once Hernandez disrobed, the four other CO Defendants entered his cell and, together with CO Andrews, viciously beat him.[2] (*Id.* ¶¶ 14–15.)

Hernandez suffered multiple serious injuries from the beating, including a ruptured testicle, a blood clot in his testicle, an enlarged scrotum (which was filled with approximately one liter of fluid and blood), a fractured rib, and a facial wound. (*Id.* ¶¶ 16–17.) He had to be rushed to the hospital to undergo emergency surgery in order to save his testicle. (*Id.* ¶ 18.) Hernandez's scrotum is permanently injured and remains scarred from the incident. (*Id.* ¶ 21.)

After being released from the hospital, Hernandez was returned to CFCF and placed in a cell for prisoners being punished (known as the "hole"),[3] based on a violation the CO Defendants allegedly fabricated. (*Id.* ¶ 20.)

---

[2] The Amended Complaint does not include any allegations to explain the motive for the beating. (*See generally* Doc. No. 23.)

[3] The term "the hole" is often used to refer to solitary confinement.

## B. *Procedural History*

In January 2022, Hernandez brought suit against the CO Defendants and the City. (Doc. No. 1.) Hernandez asserted claims for excessive force against the CO Defendants and sought to hold the City liable under a theory of municipal liability. (*Id.*) The CO Defendants answered the Complaint (Doc. No. 11), and the City moved to dismiss the municipal liability claim (Doc. No. 12). On June 23, the Court granted the City's motion to dismiss but granted Hernandez leave to amend the Complaint. (Doc. No. 20.)

On July 11, Hernandez filed the Amended Complaint. (Doc. No. 23.) The Amended Complaint brings three claims: an excessive force claim against the CO Defendants (Count I), a municipal liability claim against the City (Count II), and a supervisory liability claim against the PPD Defendants (Count III.) (*Id.*) The Amended Complaint also includes allegations detailing twelve prior instances of officers using excessive force on inmates at CFCF. (*Id.* ¶ 26.) The City moved to dismiss the municipal liability claim (Doc. No. 25), and the PPD Defendants moved to dismiss the supervisory liability claim (Doc. No. 28). On September 19, the Court denied both motions. (Doc. No. 41.)

On August 30, the United States of America moved to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) and sought a stay pending a criminal investigation into the officers' alleged beating of Hernandez.[4] (Doc. No. 35.) On October 11, the City

---

[4] Daniel Cerone, Esquire, counsel for the City of Philadelphia Law Department, initially represented all Defendants. On August 17, Attorney Cerone filed a motion to withdraw as counsel for Defendants Andrews and Murray. (Doc. No. 32.) Attorney Cerone explained that the City had just become aware that Defendants Andrews and Murray were the target of the Government's investigation into the alleged attack on Hernandez and would no longer be representing any Defendants under investigation. (*Id.*) On September 8, the Court held a hearing to show cause why Attorney Cerone should not be permitted to withdraw as counsel, but neither Defendant appeared, so the Court held another hearing on September 19. Defendant Andrews again failed to appear, but Defendant Murray did. The Court instructed Defendant Murray that he would need to obtain his own counsel (or proceed *pro se*) and granted Attorney Cerone's motion to withdraw. (Doc. No. 44.) On October 4, Attorney Cerone filed

3

"acknowledge[ed] the Governments' [sic] Application to Intervene" and independently asked the Court to "stay proceedings of this matter until the conclusion of the criminal investigation and/or prosecution." (Doc. No. 54 at 2.) Hernandez opposes the requested stay. (Doc. No. 58.)

## II. ANALYSIS

### A. *Legal Standard*

The Court has broad discretion to stay proceedings. *See Bechtel Corp. v. Local 215, Laborer's Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to stay a case pending a related criminal action, courts in this district consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal [or civil enforcement] litigation.

*See Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).

### B. *Discussion*

The Government and the City both request to stay this matter pending the resolution of a

---

another motion to withdraw as counsel for Defendants Granville and Hart because the City recently learned they are also targets in the Government's investigation. (Doc. No. 48.) The Court is holding a hearing to show cause why Attorney Cerone should not be permitted to withdraw as counsel for Defendants Granville and Hart on October 20. (Doc. No. 50.) Attorney Cerone also withdrew his representation of Defendant Reese (Doc. No. 49); however, Defendant Reese has separately obtained his own counsel who has already entered an appearance on Defendant Reese's behalf (Doc. No. 47).

criminal investigation into the alleged attack on Hernandez.  (*See* Docs. No. 35, 54.)  As an initial matter, the Court finds that the Government' application to intervene is moot, as the Government seeks to intervene solely to request a stay, and the City has since independently moved to stay the proceedings.

Because the Government's motion is moot, the Court considers only the City's motion to stay.  The City argues that a stay is proper because it will not be able to fully develop the factual record "until the criminal investigation against the individual correctional officers [is] resolved," as the CO Defendants would likely invoke their Fifth Amendment right against self-incrimination in any efforts to obtain discovery while the criminal investigation is pending.  (Doc. No. 54 at 3–4.)  Hernandez argues that a stay is inappropriate as to the claims against the CO Defendants because none of the CO Defendants have been indicted yet.  (Doc. No. 58 at 3.)  He also argues that discovery into the municipal and supervisory liability claims can—and should—continue even if the case is stayed as to the CO Defendants.  (*Id.*)

In assessing the propriety of a stay, the Court considers the *Golden Quality* factors in turn.

### 1. Hernandez's Interest in Proceeding Expeditiously and Prejudice to Hernandez if the Case Is Stayed

Although Hernandez has an interest in proceeding expeditiously, a stay is unlikely to prejudice him.  "[T]he court may insist that plaintiff establish more 'prejudice' than simply the right to pursue his case and vindicate his claim expeditiously."  *See Morgenstern v. Fox Television Stations of Phila.*, Civil Acton No. 08-0562, 2010 WL 678113, at *3 (E.D. Pa. Feb. 23, 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL 31111766, at *1 (E.D. Pa. Sept. 18, 2002)).  "Instead, the plaintiff should demonstrate a unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay."

5

*In re Derivative Litig.*, Civil Action No. 06-02964, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11, 2007).

Here, Hernandez contends the risk of prejudice is especially high because "the status of the criminal matter is nowhere to be found" and the Government "could be years away from an indictment." (Doc. No. 58 at 2.) But Hernandez does not identify any "unique" injury, and the Court can remedy Hernandez's concern that this matter might be stayed for years by entering the stay for a few-month period (rather than indefinitely). Because Hernandez has not identified a "unique" injury, this factor weighs in favor of entering a stay. *See In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *4 (E.D. Pa. May 13, 2003) ("Plaintiffs have not shown any prejudice other than delay in pursuing their suits, which is insufficient to support vacating the stay.").

### 2. Burden on Defendants if the Case Proceeds

The CO Defendants are likely to face a great burden if this case proceeds prior to the resolution of the criminal investigation and potential prosecution. So long as the criminal investigation is pending, the CO Defendants will almost certainly invoke their Fifth Amendment right against self-incrimination and refuse to offer testimony at depositions or respond to interrogatories. But if the CO Defendants invoked their Fifth Amendment privilege, the Court could draw an adverse inference from their silence. *See Sec. & Exch. Comm'n v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). There is no question that the CO Defendants would be prejudiced were they forced to choose between testifying in this matter (and thus waiving their Fifth Amendment right against self-incrimination) or remaining silent in this matter (and essentially conceding the civil case against them). *See Heraeus Materials Tech. LLC v. Tung Pham*, Civil Action No. 11–2965, 2011 WL 13227695, at *1 n.1 (E.D. Pa. June 29, 2011)

("Pham faces a significant burden if the civil case is allowed to proceed.  A civil defendant targeted in a criminal investigation may be forced to choose between waiving his Fifth Amendment rights during civil discovery, or asserting his Fifth Amendment and losing the civil case."); *Doe v. Schneider*, Civil Action No. 08–3805, 2010 WL 11561113, at *3 (E.D. Pa. June 8, 2010) (recognizing that allowing civil discovery to continue would create a "dilemma" for the defendant, who would be forced to choose "between waiving their Fifth Amendment rights during civil discovery[] or utilizing their Fifth Amendment rights and potentially losing the [civil] case").

The City and PPD Defendants, on the other hand, are unlikely to face a great burden if this case proceeds.  The only remaining claim against the City is the *Monell* claim, and the only claim remaining against the PPD Defendants is the supervisory liability claim.  Although these claims are related to the CO Defendants' alleged beating of Hernandez, the claims primarily turn on the City's policies and customs regarding the treatment of inmates in City correctional facilities.  Accordingly, even without testimony from the CO Defendants, the parties should be able to develop a fulsome record with respect to the municipal and supervisory liability claims, so this factor weighs against a stay with respect to those claims.

### 3. Efficient Use of Judicial Resources

"The Court has an interest in efficiently managing its caseload," *see In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *5, and staying the case only as to the CO Defendants would allow the Court to realize efficiencies.  As noted above, were the CO Defendants required to continue with civil discovery while the criminal investigation was pending, they would likely invoke the Fifth Amendment privilege.  In turn, this would likely create a number of disputes about the applicability of the privilege.  But the Court could avoid

these likely disputes by staying the case as to the CO Defendants. Moreover, there is a significant overlap between the claims against the CO Defendants and the potential criminal action, including factual disputes regarding the CO Defendants' involvement in the alleged beating. Should the Government prosecute the CO Defendants, Hernandez would likely be relieved of his burden of showing their involvement in the beating, thereby avoiding potentially duplicative judicial efforts. *See Heraeus Materials Tech.*, 2011 WL 13227695, at *1 n.1 (finding that a stay served "the interest of judicial economy" where there was substantial overlap between the criminal and civil actions and the court was likely "to become mired in managing motion practice regarding the applicability of the Fifth Amendment privilege").

But there is far less overlap between the facts underlying the criminal investigation and those underlying the municipal and supervisory liability claims. Even if the Government were to prosecute the CO Defendants, the resolution of that criminal action would have no meaningful impact on the resolution of the municipal and supervisory liability claims. Accordingly, this factor weighs in favor of staying the claims against the CO Defendants, but it does not support a stay of the claims against the City and PPD Defendants.

### 4. Interests of Persons Not Party to the Litigation

Neither Defendants nor Hernandez have identified any individual not party to this litigation who has an interest in this action being stayed or proceeding. Accordingly, this factor is in equipoise.

### 5. Interests of the Public

There is an important public interest in prosecuting civil rights violations, and staying this case as to the CO Defendants will permit the Government to investigate the alleged violations, unimpeded. *See Heraeus Materials Tech.*, 2011 WL 13227695, at 1 n.1 ("[T]here is an

important public interest in preventing the theft of American companies' trade secrets and illegal export of such secrets to other countries.  This public interest, however, is served by granting a stay because such a stay will allow the Government's investigation into, and possible indictment of, such activity to proceed without interruption.").  No such interest will be served, however, by staying discovery as to the municipal and supervisory liability claims, as there is no indication the Government is investigating the customs and polices undergirding those claims.

*     *     *

Considering these factors together, the Court agrees that a stay is warranted as to the claims against the CO Defendants.  But given the uncertain status of the Government's investigation, the Court declines to enter a stay indefinitely; rather, we will stay the action against the CO Defendants for 90 days, at which point the parties shall provide a status update and the Court will reassess the propriety of leaving the stay in place.

And as to the municipal and supervisory liability claims, no stay is warranted.  These claims rise and fall on the City's policies and customs regarding the treatment of inmates, not on the specifics of the CO Defendants' alleged actions.  The parties will not be burdened if discovery continues as to these claims, and these claims will not be resolved in whole or in part if the Government secures a conviction against any of the individual defendants.

### III.   CONCLUSION

For the reasons above, the Government's application to intervene and stay is denied as moot, and the City's motion to stay is granted in part.  An appropriate Order follows.